**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| John L. Smith | Case No. 24-13327-amc |
| *Debtor.* | Chapter 13 |

**Chapter 13 Plan**

☐ Original

☒ <u>First</u> Amended

**Date**: <u>10/17/2024</u>

**THE DEBTOR HAS FILED FOR RELIEF UNDER
CHAPTER 13 OF THE BANKRUPTCY CODE**

**YOUR RIGHTS WILL BE AFFECTED**

You should have received from the court a separate Notice of the Hearing on Confirmation of Plan, which contains the date of the confirmation hearing on the Plan proposed by the Debtor. This document is the actual Plan proposed by the Debtor to adjust debts. You should read these papers carefully and discuss them with your attorney. **ANYONE WHO WISHES TO OPPOSE ANY PROVISION OF THIS PLAN MUST FILE A WRITTEN OBJECTION** in accordance with Bankruptcy Rule 3015 and Local Rule 3015-4. **This Plan may be confirmed and become binding, unless a written objection is filed.**

**IN ORDER TO RECEIVE A DISTRIBUTION UNDER THE PLAN, YOU
MUST FILE A PROOF OF CLAIM BY THE DEADLINE STATED IN THE
NOTICE OF MEETING OF CREDITORS.**

### Part 1: Bankruptcy Rule 3015.1(c) Disclosures

☒ Plan contains non-standard or additional provisions – see Part 9
☐ Plan limits the amount of secured claim(s) based on value of collateral – see Part 4
☐ Plan avoids a security interest or lien – see Part 4 and/or Part 9

### Part 2: Plan Payment, Length and Distribution – PARTS 2(c) & 2(e) MUST BE COMPLETED IN EVERY CASE

**§ 2(a) Plan payments (For Initial and Amended Plans)**

**Total Length of Plan:** <u>36</u> months.

**Total Base Amount** to be paid to the Chapter 13 Trustee ("Trustee") <u>$19,980.00</u>

Debtor shall pay the Trustee <u>$555.00</u> per month for <u>36</u> months and then

Debtor shall pay the Trustee $ _____ per month for the remaining _____ months;

**OR**

Debtor shall have already paid the Trustee $ _____ through month number _____ and then shall pay the Trustee $ _____ per month for the remaining _____ months.

☐ Other changes in the scheduled plan payment are set forth in § 2(d)

**§ 2(b)**     **Debtor shall make plan payments to the Trustee from the following sources in addition to future wages (Describe source, amount and date when funds are available, if known)**

Not Applicable

**§ 2(c)**     **Alternative treatment of secured claims**

☐   **None**

*If "None" is checked, the rest of § 2(c) need not be completed.*

☒   **Sale of real property**

See § 7(c) below for detailed description.

☐   **Loan modification with respect to mortgage encumbering property**

*See § 4(f) below for detailed description.*

**§ 2(d)**     **Other information that may be important relating to the payment and length of Plan**

Not Applicable

**§ 2(e)**     **Estimated Distribution**

| | | | |
|---|---|---|---:|
| A. | Total Priority Claims (Part 3) | | |
| | 1. | Unpaid attorney's fees | $ 2,538.00 |
| | 2. | Unpaid attorney's costs | $0.00 |
| | 3. | Other priority claims (e.g., priority taxes) | $378.42 |
| B. | Total distribution to cure defaults (§ 4(b)) | | $7,013.22 |
| C. | Total distribution on secured claims (§§ 4(c) &(d)) | | $0.00 |
| D. | Total distribution on general unsecured claims (Part 5) | | $4,000.00 |
| | | **Subtotal** | $17,929.64 |
| E. | Estimated Trustee's Commission | | $2050.36 |
| F. | Base Amount | | $19,980.00 |

**§2 (f)**     **Allowance of Compensation Pursuant to L.B.R. 2016-3(a)(2)**

☒   **By checking this box, Debtor's counsel certifies that the information contained in Counsel's Disclosure of Compensation [Form B2030] is accurate, qualifies counsel to receive compensation pursuant to L.B.R. 2016-3(a)(2), and requests this Court approve counsel's compensation in the total amount of <u>$4,725.00</u> with the Trustee distributing to counsel the amount stated in §2(e)A.1. of the Plan. Confirmation of the plan shall constitute allowance of the requested compensation.**

## Part 3: Priority Claims

§ 3(a)   Except as provided in § 3(b) below, all allowed priority claims will be paid in full unless the creditor agrees otherwise.

| Creditor | Claim Number | Type of Priority | Amount to be Paid by Trustee |
|---|---|---|---|
| Sadek Law Offices, LLC | | Attorney Fees | $2,538.00 |
| Pennsylvania Department of Revenue | 3 | Tax | $378.42 |

§ 3(b)   Domestic Support obligations assigned or owed to a governmental unit and paid less than full amount.

☒   **None**

   *If "None" is checked, the rest of § 3(b) need not be completed.*

## Part 4: Secured Claims

§ 4(a) Secured Claims Receiving No Distribution from the Trustee

☐   **None**

   *If "None" is checked, the rest of § 4(a) need not be completed.*

| Creditor | Claim Number | Secured Property |
|---|---|---|
| ☒ If checked, the creditor(s) listed below will receive no distribution from the trustee and the parties' rights will be governed by agreement of the parties and applicable nonbankruptcy law.<br><br>Delaware County Tax Claim Bureau | 1 | 3805 State Road<br>Upper Darby, PA |
| ☒ If checked, the creditor(s) listed below will receive no distribution from the trustee and the parties' rights will be governed by agreement of the parties and applicable nonbankruptcy law.<br><br>Delaware County Tax Claim Bureau | 2 | 3805 State Road<br>Upper Darby, PA |

**4(b) Curing default and maintaining payments**

☐ **None**

*If "None" is checked, the rest of § 4(b) need not be completed.*

The Trustee shall distribute an amount sufficient to pay allowed claims for prepetition arrearages; and, Debtor shall pay directly to creditor monthly obligations falling due after the bankruptcy filing in accordance with the parties' contract.

| Creditor | Claim Number | Description of Secured Property and Address, if real property | Amount to be Paid by Trustee |
|---|---|---|---|
| Santander Consumer USA | 5 | 2018 Chevrolet Cruze | $7,013.22 |

**§ 4(c)   Allowed secured claims to be paid in full: based on proof of claim or pre- confirmation determination of the amount, extent or validity of the claim**

☒ **None**

*If "None" is checked, the rest of § 4(c) need not be completed.*

**§ 4(d)   Allowed secured claims to be paid in full that are excluded from 11 U.S.C. § 506**

☒ **None**

*If "None" is checked, the rest of § 4(d) need not be completed.*

**§ 4(e)   Surrender**

☒ **None**

*If "None" is checked, the rest of § 4(e) need not be completed.*

**§ 4(f)   Loan Modification**

☒ **None**

*If "None" is checked, the rest of § 4(f) need not be completed.*

**Part 5: General Unsecured Claims**

**§ 5(a)   Separately classified allowed unsecured non-priority claims**

☒ **None**

*If "None" is checked, the rest of § 5(a) need not be completed.*

**§ 5(b)   Timely filed unsecured non-priority claims**

1. Liquidation Test *(check one box)*

    ☐ All Debtor(s) property is claimed as exempt.

    ☒ Debtor(s) has non-exempt property valued at $410,949.94 for purposes of § 1325(a)(4) and plan provides for distribution of $4,000.00 to allowed priority and unsecured general creditors.

2. Funding: § 5(b) claims to be paid as follows *(check one box)*

   ☐ Pro rata

   ☒ 100%

   ☐ Other (Describe):

## Part 6: Executory Contracts & Unexpired Leases

☒ **None**

*If "None" is checked, the rest of § 6 need not be completed.*

## Part 7: Other Provisions

### § 7(a)    General principles applicable to the Plan

1. Vesting of Property of the Estate (check one box)

   ☒ Upon confirmation

   ☐ Upon discharge

2. Subject to Bankruptcy Rule 3012 and 11 U.S.C. §1322(a)(4), the amount of a creditor's claim listed in its proof of claim controls over any contrary amounts listed in Parts 3, 4 or 5 of the Plan.

3. Post-petition contractual payments under § 1322(b)(5) and adequate protection payments under § 1326(a)(1)(B),(C) shall be disbursed to the creditors by the debtor directly. All other disbursements to creditors shall be made by the Trustee.

4. If Debtor is successful in obtaining a recovery in a personal injury or other litigation in which Debtor is the plaintiff, before the completion of plan payments, any such recovery in excess of any applicable exemption will be paid to the Trustee as a special Plan payment to the extent necessary to pay priority and general unsecured creditors, or as agreed by the Debtor and the Trustee and approved by the court.

### § 7(b)    Affirmative duties on holders of claims secured by a security interest in debtor's principal residence

1. Apply the payments received from the Trustee on the pre-petition arrearage, if any, only to such arrearage.

2. Apply the post-petition monthly mortgage payments made by the Debtor to the post-petition mortgage obligations as provided for by the terms of the underlying mortgage note.

3. Treat the pre-petition arrearage as contractually current upon confirmation for the Plan for the sole purpose of precluding the imposition of late payment charges or other default-related fees and services based on the pre-petition default or default(s). Late charges may be assessed on post-petition payments as provided by the terms of the mortgage and note.

4. If a secured creditor with a security interest in the Debtor's property sent regular statements to the Debtor pre-petition, and the Debtor provides for payments of that claim directly to the creditor in the Plan, the holder of the claims shall resume sending customary monthly statements.

5. If a secured creditor with a security interest in the Debtor's property provided the Debtor with coupon books for payments prior to the filing of the petition, upon request, the creditor shall forward post-petition coupon book(s) to the Debtor after this case has been filed.

6. Debtor waives any violation of stay claim arising from the sending of statements and coupon books as set forth above.

**§ 7(c)**   **Sale of Real Property**

- ☐ **None**

    *If "None" is checked, the rest of § 7(c) need not be completed.*

1. Closing for the sale of <u>3805 State Road, Upper Darby, PA</u> (the "Real Property") shall be completed within <u>six (6)</u> months of the commencement of this bankruptcy case (the "Sale Deadline"). Unless otherwise agreed by the parties or provided by the Court, each allowed claim secured by the Real Property will be paid in full under §4(b)(1) of the Plan at the closing ("Closing Date").

2. The Real Property will be marketed for sale in the following manner and on the following terms:  <u>Pursuant to the listing agreement attached as Exhibit A.</u>

3. Confirmation of this Plan shall constitute an order authorizing the Debtor to pay at settlement all customary closing expenses and all liens and encumbrances, including all § 4(b) claims, as may be necessary to convey good and marketable title to the purchaser. However, nothing in this Plan shall preclude the Debtor from seeking court approval of the sale pursuant to 11 U.S.C. §363, either prior to or after confirmation of the Plan, if, in the Debtor's judgment, such approval is necessary or in order to convey insurable title or is otherwise reasonably necessary under the circumstances to implement this Plan.

4. At the Closing, it is estimated that the amount of no less than <u>$16,590.00</u> shall be made payable to the Trustee.

5. Debtor shall provide the Trustee with a copy of the closing settlement sheet within 24 hours of the Closing Date.

6. In the event that a sale of the Real Property has not been consummated by the expiration of the Sale Deadline: <u>The holder of any allowed claim secured by the Real Property may file a certification of default with the Court, and the Court will thereafter issue an order granting *in rem* relief from the automatic stay.</u>

## Part 8: Order of Distribution

**The order of distribution of Plan payments will be as follows:**

**Level 1**: Trustee Commissions*

**Level 2**: Domestic Support Obligations

**Level 3**: Adequate Protection Payments

**Level 4**: Debtor's attorney's fees

**Level 5**: Priority claims, pro rata

**Level 6**: Secured claims, pro rata

**Level 7**: Specially classified unsecured claims

**Level 8**: General unsecured claims

**Level 9**: Untimely filed general unsecured non-priority claims to which debtor has not objected

***Percentage fees payable to the standing trustee will be paid at the rate fixed by the United States Trustee not to exceed ten (10) percent.***

## Part 9: Non Standard or Additional Plan Provisions

Under Bankruptcy Rule 3015.1(e), Plan provisions set forth below in Part 9 are effective only if the applicable box in Part 1 of this Plan is checked. Nonstandard or additional plan provisions placed elsewhere in the Plan are void.

☐ **None**

*If "None" is checked, the rest of Part 9 need not be completed.*

**§ 9(a) Effect of Stipulation with the Delaware County Tax Claim Bureau**

The terms of Section 7(c) of this plan do not supersede the terms of any court-approved stipulation between the Debtor and the Delaware County Tax Claim Bureau with respect to treatment of Delaware County's secured claims.

## Part 10: Signatures

By signing below, attorney for Debtor(s) or unrepresented Debtor(s) certifies that this Plan contains no nonstandard or additional provisions other than those in Part 9 of the Plan, and that the Debtor(s) are aware of, and consent to the terms of this Plan.

Date: October 17, 2024                     /s/ Brad J. Sadek
                                           Brad J. Sadek
                                           Attorney for Debtor

### Certificate of Service

I, Brad J. Sadek, Esq., hereby certify that on October 17, 2024, a true and correct copy of the First Amended Chapter 13 Plan was served by electronic delivery or Regular US Mail to the Debtor, secured and priority creditors, the Trustee and all other directly affected creditors per the address provided on their Proof of Claims. If said creditor(s) did not file a proof of claim, then the address on the listed on the Debtor's credit report will be used for service.

Date: October 17, 2024                     /s/ Brad J. Sadek
                                           Brad J. Sadek

# Exhibit A



**LISTING CONTRACT (SELLER AGENCY CONTRACT)**
**EXCLUSIVE RIGHT TO SELL REAL ESTATE**

XLS

This form recommended and approved for, but not restricted to use by, the members of the Pennsylvania Association of Realtors® (PAR).

1  Broker (Company) **Keller Williams Real Estate-Blue Bell**    Licensee(s) (Name) **Anthony V. Santangelo**
2
3  Company Address **910 Harvest Dr Ste 100, Blue Bell, PA**    Direct Phone(s) **(215)664-1050**
4  **19422-1962**                                                Cell Phone(s) **(610)724-0080**
5  Company Phone **(215)646-2900**                               Fax **(215)654-6060**
6  Company Fax **(215)654-6060**                                 Email **tonyveerealtor@aol.com**

7  SELLER **John Leroy Smith, Ivi Linn Robinson**
8
9  SELLER'S MAILING ADDRESS **3805 State Rd, Drexel Hill, PA  19026**
10
11  PHONE **(267)265-3039**                                      FAX
12  E-MAIL **smithreliancegroup@gmail.com, ivirobinsonsmith@gmail.com**

13  Seller understands that this Listing Contract is between Broker and Seller.
14  Does Seller have a listing contract for this Property with another broker?    ☐ Yes   ☒ No
15  If yes, explain:

16  1.  **PROPERTY**                                              LISTED PRICE $ **535,000** JLS IPR AV
17     Address **3805 State Rd**                                **Drexel Hill**            PA   ZIP **19026**
18     Municipality (city, borough, township) **Township of Upper Darby**
19     County **Delaware**                                       School District **Upper Darby**
20     Zoning **Residential**
21     Present Use **1101-Single Family**
22     Currently Occupied By **Yes**
23     Identification (For example, Tax ID #; Parcel #; Lot, Block; Deed Book, Page, Recording Date) **Tax ID#16-10-01561-00 and**
24     **Tax ID# 16-10-01560-00    Tax Map 13, Lots 164-027 and 164-028**
25  2.  **STARTING & ENDING DATES OF LISTING CONTRACT (ALSO CALLED "TERM")**
26     (A) No Association of REALTORS® has set or recommended the term of this contract. Broker/Licensee and Seller have discussed and
27         agreed upon the term of this Contract.
28     (B) **Starting Date:** This Contract starts when signed by Broker and Seller, unless otherwise stated here:  **03/21/2024** → 03/28/2024 JLS
29     (C) **Ending Date:** This Contract ends at 11:59 PM on    **09/30/2024**   . By law, the term of a listing contract may not exceed AV
30         one year. If the Ending Date written in this Contract creates a term that is longer than one year, the Ending Date is automatically
31         364 days from the Starting Date of this Contract.
32  3.  **DUAL AGENCY**
33     Seller agrees that Broker and Broker's Licensees may also represent the buyer(s) of the Property. A Broker is a Dual Agent when a
34     Broker represents both a buyer and Seller in the same transaction. A Licensee is a Dual Agent when a Licensee represents a buyer and
35     Seller in the same transaction. All of Broker's licensees are also Dual Agents UNLESS there are separate Designated Agents for a buyer
36     and Seller. If the same Licensee is designated for a buyer and Seller, the Licensee is a Dual Agent. Seller understands that Broker is a
37     Dual Agent when a buyer who is represented by Broker is viewing properties listed by Broker.
38  4.  **DESIGNATED AGENCY**
39     Designated Agency is applicable, unless checked below. Broker designates the Licensee(s) above to exclusively represent the interests
40     of Seller. If Licensee is also the buyer's agent, then Licensee is a DUAL AGENT.
41     ☐ **Designated Agency is not applicable.**
42  5.  **BROKER'S FEE**
43     (A) No Association of REALTORS® has set or recommended the Broker's Fee. Broker and Seller have negotiated the fee that Seller
44         will pay Broker.  5% AV JLS IPR
45     (B) Broker's Fee is **6,000** % of the sale price OR $ _____, whichever is greater, AND $ **$395** _____, paid
46         to Broker by Seller as follows:
47         1.  $ **n/a**              of Broker's Fee is earned and due **(non-refundable)** at signing of this Listing Contract, pay-
48            able to Broker.

49  Broker/Licensee Initials: **AV**                XLS Page 1 of 7                       Seller Initials: **JLS  IPR**

COPYRIGHT PENNSYLVANIA ASSOCIATION OF REALTORS® 2023
rev. 9/22; rel. 1/23

Keller Williams Real Estate-Blue Bell, 910 Harvest Dr. Suite #100 Blue Bell, PA 19422         Phone: 215-664-1050     Fax: 215-654-6060           3805 State Rd.
Tony Santangelo                       Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com

2. **Seller will pay** the balance of **Broker's Fee** if:
   a. **Property, or any ownership interest in it, is sold or exchanged during the term of this Contract by Broker, Broker's Licensee(s), Seller, or by any other person or broker, at the listed price or any price acceptable to Seller,** OR
   b. A ready, willing, and able buyer is found, during the term of this contract, by Broker or by anyone, including Seller. A willing buyer is one who will pay the listed price or more for the Property, or one who has submitted an offer accepted by Seller, OR
   c. Negotiations that are pending at the Ending Date of this Contract result in a sale, OR
   d. A Seller signs an agreement of sale then refuses to sell the Property, or if a Seller is unable to Sell the Property because of failing to do all the things required of the Seller in the agreement of sale (Seller default), OR
   e. The Property or any part of it is taken by any government for public use (Eminent Domain), in which case Seller will pay from any money paid by the government, OR
   f. A sale occurs after the Ending Date of this Contract IF:
      (1) The sale occurs within __180__ days of the Ending Date, AND
      (2) The buyer was shown or negotiated to buy the Property during the term of this contract, AND
      (3) The Property is not listed under an "exclusive right to sell contract" with another broker at the time of the sale.
   (C) If a sale occurs, balance of Broker's Fee will be paid upon delivery of the deed or other evidence of transfer of title or interest. If the Property is transferred by an installment contract, balance of Broker's Fee will be paid upon the execution of the installment contract.

6. **BROKER'S FEE IF SETTLEMENT DOES NOT OCCUR**
   If an agreement of sale is signed and settlement does not occur, and deposit monies are released to Seller, Seller will pay Broker **50%** _____ of/from deposit monies.

7. **COOPERATION WITH OTHER BROKERS**
   Licensee(s) has explained Broker's company policies about cooperating with other brokers. Broker and Seller agree that Broker will pay **from Broker's Fee** a fee to another broker who procures the buyer, is a member of a Multiple Listing Service (MLS), and who:
   (A) ☐ **Represents Seller (SUBAGENT).** Broker will pay _____ of/from the sale price.
   (B) ☒ **Represents the buyer (BUYER'S AGENT).** Broker will pay _____**2.5%**_____ of/from the sale price. A buyer's Agent, even if compensated by Broker for Seller, will represent the interests of the buyer.
   (C) ☐ **Does not represent either Seller or a buyer (TRANSACTION LICENSEE).**
   Broker will pay _____ of/from the sale price.

8. **DUTIES OF BROKER AND SELLER**
   (A) Broker is acting as a Seller Agent, as described in the Consumer Notice, to market the Property and to negotiate with potential buyers. Broker will use reasonable efforts to find a buyer for the Property.
   (B) Seller will cooperate with Broker and assist in the sale of the Property as asked by Broker.
   (C) All showings, negotiations and discussions about the sale of the Property, written or oral, will be communicated by Broker on Seller's behalf. All written or oral inquiries that Seller receives or learns about regarding the Property, regardless of the source, will be referred to Broker.
   (D) If the Property, or any part of it, is rented, Seller will give any leases to Broker before signing this Contract. If any leases are oral, Seller will provide a written summary of the terms, including amount of rent, ending date, and Tenant's responsibilities.
   (E) Seller will not enter into, renew, or modify any leases, or enter into any option to sell, during the term of this Contract without Broker's written consent.

9. **BROKER'S SERVICE TO BUYER**
   Broker may provide services to a buyer for which Broker may accept a fee. Such services may include, but are not limited to: document preparation; ordering certifications required for closing; financial services; title transfer and preparation services; ordering insurance, construction, repair, or inspection services.

10. **BROKER NOT RESPONSIBLE FOR DAMAGES**
    Seller agrees that Broker and Broker's Licensee(s) are not responsible for any damage to the Property or any loss or theft of personal goods from the Property unless such damage, loss or theft is solely and directly caused by Broker or Broker's Licensee(s).

11. **DEPOSIT MONEY**
    (A) Broker, if named in an agreement of sale, will keep all deposit monies paid by or for the buyer in an escrow account until the sale is completed, the agreement of sale is terminated, or the terms of a prior written agreement between the buyer and Seller have been met. This escrow account will be held as required by real estate licensing laws and regulations. Buyer and Seller may name a non-licensee as the escrow holder, in which case the escrow holder will be bound by the terms of the escrow agreement, if any, not by the Real Estate Licensing and Registration Act. Seller agrees that the person keeping the deposit monies may wait to deposit any uncashed check that is received as deposit money until Seller has accepted an offer.
    (B) Regardless of the apparent entitlement to deposit monies, Pennsylvania law does not allow a Broker holding deposit monies to determine who is entitled to the deposit monies when settlement does not occur. Broker can only release the deposit monies:
       1. If an agreement of sale is terminated prior to settlement and there is no dispute over entitlement to the deposit monies. A written agreement signed by both parties is evidence that there is no dispute regarding deposit monies.

Broker/Licensee Initials: _____    XLS Page 2 of 7    Seller Initials: __JLS__  __JFF__

2. If, after Broker has received deposit monies, Broker receives a written agreement that is signed by Buyer and Seller, directing Broker how to distribute some or all of the deposit monies.
3. According to the terms of a final order of court.
4. According to the terms of a prior written agreement between Buyer and Seller that directs the Broker how to distribute the deposit monies if there is a dispute between the parties that is not resolved.

(C) Seller agrees that if Seller names Broker or Broker's licensee(s) in litigation regarding deposit monies, the attorneys' fees and costs of the Broker(s) and licensee(s) will be paid by Seller.

## 12. OTHER PROPERTIES
Seller agrees that Broker may list other properties for sale and that Broker may show and sell other properties to prospective buyers.

## 13. ADDITIONAL OFFERS
Unless prohibited by Seller, if Broker is asked by a buyer or another licensee(s) about the existence of other offers on the Property, Broker will reveal the existence of other offers and whether they were obtained by the Licensee(s) identified in this Contract, by another Licensee(s) working with Broker, or by a licensee(s) working for a different Broker. ONCE SELLER ENTERS INTO AN AGREEMENT OF SALE, BROKER IS NOT REQUIRED TO PRESENT OTHER OFFERS.

## 14. SELLER WILL REVEAL DEFECTS & ENVIRONMENTAL HAZARDS
(A) Seller (including Sellers exempt from the Real Estate Seller Disclosure Law) will disclose all known material defects and/or environmental hazards on a separate disclosure statement. A material defect is a problem or condition that:
1. is a possible danger to those living on the Property, or
2. has a significant, adverse effect on the value of the Property.

The fact that a structural element, system or subsystem is near, at or beyond the end of the normal useful life of such a structural element, system or subsystem is not by itself a material defect.

(B) Seller will update the Seller's Property Disclosure Statement as necessary throughout the term of this Listing Contract.
(C) If Seller fails to disclose known material defects and/or environmental hazards:
1. Seller will not hold Broker or Licensee(s) responsible in any way;
2. Seller will protect Broker and Licensee(s) from any claims, lawsuits, and actions that result;
3. Seller will pay all of Broker's and Licensee's costs that result. This includes attorneys' fees and court-ordered payments or settlements (money Broker or Licensee pays to end a lawsuit or claim).

## 15. IF PROPERTY WAS BUILT BEFORE 1978
The Residential Lead-Based Paint Hazard Reduction Act says that any seller of property built before 1978 must give the buyer an EPA pamphlet titled *Protect Your Family From Lead in Your Home*. The seller also must tell the buyer and the broker what the seller knows about lead-based paint and lead-based paint hazards that are in or on the property being sold. Seller must tell the buyer how the seller knows that lead-based paint and lead-based paint hazards are on the property, where the lead-based paint and lead-based paint hazards are, the condition of the painted surfaces, and any other information seller knows about lead-based paint and lead-based paint hazards on the property. Any seller of a pre-1978 structure must also give the buyer any records and reports that the seller has or can get about lead-based paint or lead-based paint hazards in or around the property being sold, the common areas, or other dwellings in multi-family housing. According to the Act, a seller must give a buyer 10 days (unless seller and the buyer agree to a different period of time) from the time an agreement of sale is signed to have a "risk assessment" or inspection for possible lead-based paint hazards done on the property. Buyers may choose not to have the risk assessment or inspection for lead paint hazards done. If the buyer chooses not to have the assessment or inspection, the buyer must inform the seller in writing of the choice. The Act does not require the seller to inspect for lead paint hazards or to correct lead paint hazards on the property. The Act does not apply to housing built in 1978 or later.

## 16. HOME WARRANTIES
At or before settlement, Seller may purchase a home warranty for the Property from a third-party vendor. Seller understands that a home warranty for the Property does not alter any disclosure requirements of Seller, may not cover or warrant any pre-existing defects of the Property, and will not alter, waive or extend any provisions of the Agreement regarding inspections or certifications that Buyer may elect or waive as part of the Agreement. Seller understands that Broker who recommends a home warranty may have a business relationship with the home warranty company that provides a financial benefit to Broker.

## 17. RECORDINGS ON THE PROPERTY
(A) Seller understands that potential buyers viewing the Property may engage in photography, videography or videotelephony on the Property. Seller should remove any items of a personal nature Seller does not wish to have photographed or recorded, such as family photos, important or confidential paperwork (including any information relating to the listing or communications with Broker or Licensee) and all other personally identifiable information such as birthdates, social security numbers, telephone numbers, etc. Seller is responsible for providing this same notification to any occupants of the Property.
(B) Any person who intentionally intercepts oral communications by electronic or other means without the consent of all parties is guilty of a felony under Pennsylvania law. Seller understands that recording or transmitting audio may result in violation of state or federal wiretapping laws. **Seller hereby releases all BROKERS, their LICENSEES, EMPLOYEES and any OFFICER or PARTNER of any one of them, and any PERSON, FIRM or CORPORATION who may be liable by or through them, from any claims, lawsuits and actions which may arise from any audio or video recordings occurring in or around the Property.**

Broker/Licensee Initials: _____    XLS Page 3 of 7    Seller Initials: JLS _____

167  **18. RECOVERY FUND**
168  Pennsylvania has a Real Estate Recovery Fund (the Fund) to repay any person who has received a final court ruling (civil judgment)
169  against a Pennsylvania real estate licensee because of fraud, misrepresentation, or deceit in a real estate transaction. The Fund repays
170  persons who have not been able to collect the judgment after trying all lawful ways to do so. For complete details about the Fund, call
171  (717) 783-3658.
172  **19. NOTICE TO PERSONS OFFERING TO SELL OR RENT HOUSING IN PENNSYLVANIA**
173  Federal and state laws make it illegal for a seller, a broker, or anyone to use RACE, COLOR, RELIGION or RELIGIOUS CREED, SEX,
174  DISABILITY (physical or mental), FAMILIAL STATUS (children under 18 years of age), AGE (40 or older), NATIONAL ORIGIN,
175  USE OR HANDLING/TRAINING OF SUPPORT OR GUIDE ANIMALS, or the FACT OF RELATIONSHIP OR ASSOCIATION
176  TO AN INDIVIDUAL KNOWN TO HAVE A DISABILITY as reasons for refusing to sell, show, or rent properties, loan money, or
177  set deposit amounts, or as reasons for any decision relating to the sale of property.
178  **20. TRANSFER OF THIS CONTRACT**
179  (A) Seller agrees that Broker may transfer this Contract to another broker when:
180    1. Broker stops doing business, OR
181    2. Broker forms a new real estate business, OR
182    3. Broker joins his business with another.
183  (B) Broker will notify Seller immediately in writing if Broker transfers this Contract to another broker. Seller will follow all requirements
184  of this Contract with the new broker.
185  **21. NO OTHER CONTRACTS**
186  Seller will not enter into another listing contract for the property(s) identified in Paragraph 1 with another broker that begins before the
187  Ending Date of this Contract.
188  **22. CONFLICT OF INTEREST**
189  It is a conflict of interest when Broker or Licensee has a financial or personal interest in the property and/or cannot put Seller's interests
190  before any other. If Broker, or any of Broker's licensees, has a conflict of interest, Broker will notify Seller in a timely manner.
191  **23. ENTIRE CONTRACT**
192  This Contract is the entire agreement between Broker and Seller. Any verbal or written agreements that were made before are not a part
193  of this Contract.
194  **24. CHANGES TO THIS CONTRACT**
195  All changes to this Contract must be in writing and signed by Broker and Seller.
196  **25. MARKETING OF PROPERTY**
197  (A) Multiple Listing Services (MLS)
198    1. An MLS is a subscription service used by real estate licensees to market properties to other subscribers. If marketed in an MLS,
199       Broker will make an offer of cooperating compensation to another participant who procures a tenant for the Property (See Para-
200       graph 7). MLS marketing is governed by specific rules and policies, which may differ depending on the MLS used.
201    2. Sellers have the right to decide whether their Property will be marketed in an MLS, but should understand that opting out of
202       MLS marketing may restrict Broker's ability to market the Property in other ways.
203       ☐ Broker **will not** use an MLS to advertise the Property. Seller understands and agrees that the listing may be reported to an
204          MLS, but will not be marketed for sale via an MLS. Further, Seller understands and agrees that any and all public marketing
205          of the Property through the use of other means such as yard signs, social media, and public-facing websites may be prohib-
206          ited. Seller may be required to sign an additional waiver or release to comply with MLS rules and policies.
207       ☒ Broker will use an MLS to advertise the Property to other real estate brokers and salespersons. Listing broker shall com-
208          municate to the MLS all of Seller's elections made below. Seller agrees that Broker and Licensee, and the MLS are not
209          responsible for mistakes in an MLS or advertising of the Property.
210  (B) Virtual Office Website (VOW) and Internet Data Exchange (IDX)
211    1. Some brokers may use a VOW or IDX, which are governed by specific rules and policies. Sellers have the right to control some
212       elements of how their property is displayed on a VOW and/or IDX website.
213    2. Seller elects to have the following features disabled or discontinued for VOW and IDX websites (check all that apply):
214       ☐ Comments or reviews about Seller's listings, or a hyperlink to such comments or reviews, in immediate conjunction with
215          Seller's listing.
216       ☐ Automated estimates of the market value of Seller's listing, or a hyperlink to such estimates, in immediate conjunction with
217          the Seller's listing.
218  (C) Other
219    1. Where permitted, Broker, at Broker's option, may use: for sale sign, lock box, key in office, open houses and advertising in all
220       media, including print and electronic, photographs and videos, unless otherwise stated here: _____
221       _____
222    2. ☐ Seller does not want the listed Property to be displayed on the Internet.
223       ☐ Seller does not want the address of the listed Property to be displayed on the Internet.
224    3. Seller understands and acknowledges that, if the listed Property is not displayed on the Internet, consumers who conduct searches
225       for listings on the Internet will not see information about the listed Property in response to their search.

226  **Broker/Licensee Initials:** _XW_    XLS Page 4 of 7    **Seller Initials:** _JLS_ _LPR_

227     (D) Seller understands and acknowledges that, if an open house is scheduled, the property address may be published on the Internet in
228         connection to the open house.
229     (E) Other _____

230 **26. PUBLICATION OF SALE PRICE**
231     Seller is aware that the Multiple Listing Service (MLS), newspapers, Web Sites, and other media may publish the final sale price of the
232     Property.

233 **27. COPYRIGHT**
234     In consideration of Broker's efforts to market Seller's Property as stated in this Contract, Seller grants Broker a non-exclusive, world-
235     wide license (the "License") to use any potentially copyrightable materials (the "Materials") which are related to the Property and pro-
236     vided by Seller to Broker or Broker's representative(s). The Materials may include, but are not limited to: photographs, images, video
237     recordings, virtual tours, drawings, written descriptions, remarks, and pricing information related to Seller's Property. This License
238     permits Broker to submit the Materials to one or more multiple listing services, to include the Materials in compilations of property list-
239     ings, and to otherwise distribute, publicly display, reproduce, publish and produce derivative works from the Materials for any purpose
240     that does not conflict with the express terms of this Contract. The License may not be revoked by Seller and shall survive the ending of
241     this Contract. Seller also grants Broker the right to sublicense to others any of these rights granted to Broker by Seller. Seller represents
242     and warrants to Broker that the License granted to Broker for the Materials does not violate or infringe upon the rights, including any
243     copyrights, of any person or entity. Seller understands that the terms of the License do not grant Seller any legal right to any works that
244     Broker may produce using the Materials.

245 **28. FIXTURES AND PERSONAL PROPERTY**
246     (A) It is possible for certain items of personal property to be so integrated into the Property that they become fixtures and will be regarded
247         as part of the Property and therefore included in a sale. **Seller is encouraged to be specific when negotiating what items will be**
248         **included or excluded in a sale.**
249     (B) INCLUDED in this sale are all existing items permanently installed in the Property, free of liens, and other items including plumb-
250         ing; heating; radiator covers; hardwired security systems; thermostats; lighting fixtures (including chandeliers and ceiling fans);
251         pool and spa equipment (including covers and cleaning equipment); electric animal fencing systems (excluding collars); garage door
252         openers and transmitters; unpotted shrubbery, plantings and trees; any remaining heating and cooking fuels stored on the Property
253         at the time of settlement; smoke detectors and carbon monoxide detectors; sump pumps; storage sheds; fences; mailboxes; wall to
254         wall carpeting; existing window screens, storm windows and screen/storm doors; window covering hardware, shades and blinds;
255         awnings; built-in air conditioners; built-in appliances; the range/oven, unless otherwise stated; and, if owned, solar panels, windmills,
256         water treatment systems, propane tanks and satellite dishes. Also included: _Refrigerator, Tree House +_
257     _Tree Fort - AS-IS_
258     (C) The following items are not owned by Seller and may be subject to a lease or other financing agreement (e.g., solar panels, windmills,
259         water treatment systems, propane tanks, and satellite dishes): _____
260
261     (D) EXCLUDED fixtures and items: _Washer + Dryer + Window Drapes/Curtains_
262

263 **29. TAXES & SPECIAL ASSESSMENTS**
264     (A) At settlement, Seller will pay one-half of the total Real Estate Transfer Taxes, unless otherwise stated here: _____
265
266     (B) Yearly Property Taxes $ **9793.00+ 2114.00**  Property Assessed Value $ **232,390 + $50,170**
267     (C) Is the property preferentially assessed (including a tax abatement)?  ☐ Yes  ☒ No
268         If applicable, how many years remain? _____
269     (D) COA/HOA Name _____ COA/HOA Phone _____
270     COA/HOA special assessments $ _____ Buyer's required capital contribution $ _____
271     Please explain: _____
272     (E) COA/HOA Fees $ _____ ☐ Quarterly  ☐ Monthly  ☐ Yearly
273     (F) Municipality Assessments $ _____

274 **30. FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT OF 1980 (FIRPTA)**
275     The disposition of a U.S. real property interest by a foreign person (the transferor) is subject to the Foreign Investment in Real Property
276     Tax Act of 1980 (FIRPTA) income tax withholding. FIRPTA authorized the United States to tax foreign persons on dispositions of
277     U.S. real property interests. This includes but is not limited to a sale or exchange, liquidation, redemption, gift, transfers, etc. Persons
278     purchasing U.S. real property interests (transferee) from foreign persons, certain purchasers' agents, and settlement officers are required
279     to withhold up to 15 percent of the amount realized (special rules for foreign corporations). Withholding is intended to ensure U.S. tax-
280     ation of gains realized on disposition of such interests. The transferee/buyer, as the withholding agent, may request that you complete a
281     FIRPTA Affidavit regarding your status as a foreign person as defined by the Act. Seller agrees to comply, if applicable.

282 Broker/Licensee Initials: _AW_          XLS Page 5 of 7          Seller Initials: _JLS_ _LR_

**31. TITLE & POSSESSION**

(A) Seller will give possession of Property to a buyer at settlement, or on _____

(B) At settlement, Seller will give full rights of ownership (fee simple) to a buyer except as follows:
☐ Oil   ☐ Gas   ☐ Mineral   ☐ Other
If checked, please explain: _____

(C) Seller has:
☐ First mortgage with _____ Amount of balance $ _____
  Address _____
  Phone _____ Acct. # _____
☐ Second mortgage with _____ Amount of balance $ _____
  Address _____
  Phone _____ Acct. # _____
☐ Home Equity line of credit with _____ Amount of balance $ _____
  Address _____
  Phone _____ Acct. # _____
☐ Seller authorizes Broker to receive mortgage payoff and/or equity loan payoff information from lender(s).

(D) Seller has:
☐ Judgments $ _____   ☐ Past Due Municipal Assessment $ _____
☐ Past Due Property Taxes $ _____   ☐ Past Due COA/HOA Fees $ _____
☐ Federal Tax Liens $ _____   ☐ Past Due COA/HOA Assessments $ _____
☐ State Tax Liens (including sales, use and hotel occupancy taxes) $ _____
☐ Other: _____ $ _____

(E) If Seller, at any time on or since January 1, 1998, has been obligated to pay support under an order on record in any Pennsylvania county, list the county and the Domestic Relations Number or Docket Number: _____

**31. BUYER FINANCING**

Seller will accept the following arrangements for buyer to pay for the Property:
☒ Cash   ☒ Conventional mortgage   ☒ FHA mortgage   ☒ VA mortgage
☒ Seller's Assist to buyer (if any) $ **with acceptable net sale price to Seller**, or _____ %

**32. SPECIAL INSTRUCTIONS**

The Office of the Attorney General has not pre-approved any special conditions or additional terms added by any parties. Any special conditions or additional terms in this Contract must comply with the Pennsylvania Plain Language Consumer Contract Act.

**33. SPECIAL CLAUSES**

(A) The following are part of this Listing Contract if checked:
☐ Property Description Addendum to Listing Contract (PAR Form XLS-A)
☐ Single Agency Addendum (PAR Form SA)
☐ Consumer Services Fee Addendum (PAR Form CSF)
☐ Vacant Land Addendum to Listing Contract (PAR Form VLA)
☐ Short Sale Addendum (PAR Form SSL)
☒ **Keller Williams Addendum & Fraud Notice**
☐ _____

(B) Additional Terms:

Broker/Licensee Initials: _____   XLS Page 6 of 7   Seller Initials: JLS _____

343  *JLS ILR*  Seller has read the Consumer Notice as adopted by the State Real Estate Commission at 49 Pa. Code §35.336.

344  *JLS ILR*  Seller has received the Seller's Property Disclosure form and agrees to complete and return to Listing Broker in a
345            timely manner, if required.

346  *JLS ILR*  Seller has received the Lead-Based Hazards Disclosure form and agrees to complete and return to Listing Broker in
347            a timely manner, if required.

348  Seller has read the entire Contract before signing. Seller must sign this Contract.

349  Seller gives permission for Broker to send information about this transaction to the fax number(s) and/or e-mail address(es) listed.

350  Return of this Agreement, and any addenda and amendments, including return by electronic transmission, bearing the signatures
351  of all parties, constitutes acceptance by the parties.

352  This Contract may be executed in one or more counterparts, each of which shall be deemed to be an original and which counterparts
353  together shall constitute one and the same Agreement of the Parties.

354  NOTICE BEFORE SIGNING: IF SELLER HAS LEGAL QUESTIONS, SELLER IS ADVISED TO CONSULT A PENN-
355  SYLVANIA REAL ESTATE ATTORNEY.

356  SELLER  *John L Smith*                                             DATE  3-25-2024
        John Leroy Smith
357  SELLER  *Ivi Linn Robinson*                                        DATE  03/25/2024
        Ivi Linn Robinson
358  SELLER  _____             DATE  _____

359  BROKER (Company Name)  Keller Williams Real Estate-Blue Bell

360  ACCEPTED ON BEHALF OF BROKER BY  *[signature]*                     DATE  03/25/24
                                      Anthony V. Santangelo

XLS Page 7 of 7

# CHANGE TO LISTING CONTRACT     CLC

This form recommended and approved for, but not restricted to use by, the members of the Pennsylvania Association of REALTORS® (PAR).

1  **PROPERTY 3805 State Rd, Drexel Hill, PA  19026**
2  **BROKER (Company) Keller Williams Real Estate**
3  **SELLER John Leroy Smith, Ivi Linn Robinson**
4  **DATE OF LISTING CONTRACT         March 28, 2024         LISTING PRICE $ 495,000.00**

5  Broker and Seller agree to change the terms of the above Listing Contract as follows:

6  1. Ending Date of the Listing Contract is changed to: **March 31, 2025**
7  2. Listed Price is changed to: $ **n/a**
8  3. Appoint Additional Designated Agent(s): **n/a**
9     Seller renounces the agency relationships held with all licensees affiliated with Broker who are not Designated Agents for Seller. Any
10    licensee(s) that has been previously designated and is not being removed in paragraph 4 remains a Designated Agent for Seller.
11 4. Remove Designated Agent(s): **n/a**
12 5. Cooperating Compensation is changed to: **n/a**
13 6. Maximum Seller Concession is changed to: **n/a**
14 7. Change to how Cooperating Compensation and/or Seller Concessions are communicated: _____
15 _____
16 _____
17 8. Other: _____

40 All other terms and conditions of the Listing Contract remain unchanged and in full force and effect.

41 SELLER *John Smith*    DATE 9/29/2024
   **John Leroy Smith**

42 SELLER *Ivi Robinson*    DATE 9/29/2024
   **Ivi Linn Robinson**

43 SELLER _____    DATE _____

44 BROKER (Company Name) **Keller Williams Real Estate**
45    ACCEPTED BY *Anthony V. Santangelo*    DATE 9/29/2024
   **Anthony V. Santangelo**


**Pennsylvania Association of Realtors®**

COPYRIGHT PENNSYLVANIA ASSOCIATION OF REALTORS® 2024
rev. 8/24; rel. 8/24

Keller Williams Real Estate-Blue Bell, 910 Harvest Dr. Suite #100 Blue Bell, PA 19422        Phone: 215-664-1050    Fax: 215-654-6060    3805 State Rd,
Tony Santangelo            Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201   www.lwolf.com